UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Steven R. Crandlemere,
     Claimant

     v.                           Case No. 11-cv-529-SM
                                      Opinion No. 2013 DNH 007

Michael J. Astrue, Commissioner,
Social Security Administration
     Defendant

**O R D E R**

Pursuant to 42 U.S.C. § 405(g), claimant, Steven Crandlemere, moves to reverse the Commissioner's decision denying his application for Social Security Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 423 (the "Act").  The Commissioner objects and moves for an order affirming his decision.

For the reasons discussed below, claimant's motion is granted, to the extent claimant seeks remand for further proceedings.  The Commissioner's motion is denied.

**Factual Background**

I.   Procedural History.

In July of 2009, claimant filed an application for Disability Insurance Benefits, alleging that he had been unable to work since June 3, 2009, due to disabling pain caused by degenerative disc disease.  That application was denied and claimant requested a hearing before an Administrative Law Judge ("ALJ").

In April of 2011, claimant, his attorney, and a vocational expert appeared before ALJ Thomas Merrill, who considered claimant's application de novo.  Approximately six weeks later, the ALJ issued his written decision, concluding that claimant retained the residual functional capacity to perform the physical and mental demands of a range of light work.  And, given that finding, the ALJ concluded that claimant was capable of performing past relevant work as an order picker and a fast food worker.  The ALJ also concluded that there were other jobs in that national economy that claimant could perform.  Accordingly, he determined that claimant was not disabled, as that term is defined in the Act, at any time prior to June 3, 2011 (the date of the ALJ's decision).

2

Claimant then sought review of the ALJ's decision by the Decision Review Board. That request was denied. Accordingly, the ALJ's denial of claimant's application for benefits became the final decision of the Commissioner, subject to judicial review. Subsequently, claimant filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence and seeking a judicial determination that he is disabled within the meaning of the Act. Claimant then filed a "Motion to Reverse" the decision of the Commissioner (document no. 9). In response, the Commissioner filed a "Motion for an Order Affirming the Decision of the Commissioner" (document no. 11). Those motions are pending.

II.  <u>Stipulated Facts</u>.

Pursuant to this court's Local Rule 9.1(d), the parties have submitted a statement of stipulated facts which, because it is part of the court's record (document no. 14), need not be recounted in this opinion. Those facts relevant to the disposition of this matter are discussed as appropriate.

3

**Standard of Review**

I.   "Substantial Evidence" and Deferential Review.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Factual findings and credibility determinations made by the Commissioner are conclusive if supported by substantial evidence.  See 42 U.S.C. §§ 405(g), 1383(c)(3).  See also Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  It is something less than a preponderance of the evidence, so the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.  Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).  See also Richardson v. Perales, 402 U.S. 389, 401 (1971).  Consequently, provided the ALJ's findings are properly supported, the court must sustain those findings even when there may also be substantial evidence supporting the contrary position.  See, e.g., Tsarelka v. Secretary of Health &

4

Human Services, 842 F.2d 529, 535 (1st Cir. 1988); Rodriguez v. Secretary of Health & Human Services, 647 F.2d 218, 222 (1st Cir. 1981).

II.   The Parties' Respective Burdens.

An individual seeking Social Security disability benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act places the initial burden on the claimant to establish the existence of a disabling impairment. See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden, the claimant must prove, by a preponderance of the evidence, that his impairment prevents him from performing his former type of work.  See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985); Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).  If the claimant demonstrates an inability to perform his previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that he can perform.  See Vazquez v. Secretary

of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982). See also 20 C.F.R. § 404.1512(g).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience. See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 6 (1st Cir. 1982). Ultimately, a claimant is disabled only if his:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm his decision.

**Discussion**

I.   <u>Background - The ALJ's Findings</u>.

In concluding that claimant was not disabled within the
meaning of the Act, the ALJ properly employed the mandatory five-
step sequential evaluation process described in 20 C.F.R.
§ 404.1520.  Accordingly, he first determined that claimant met
the insured status requirements of the Act through September 30,
2011 (his "date last insured") and had not been engaged in
substantial gainful employment since his alleged onset of
disability: June 3, 2009.  Administrative Record ("Admin. Rec.")
at 17.  Next, he concluded that claimant suffers from the
following severe impairment: "degenerative disc disease of the
lumbar spine."  <u>Id</u>.  Nevertheless, the ALJ determined that
claimant's impairment did not meet or medically equal one of the
impairments listed in Part 404, Subpart P, Appendix 1.  Admin.
Rec. at 18.

Next, the ALJ concluded that claimant retained the residual
functional capacity ("RFC") to perform the exertional demands of
"light work as defined in 20 C.F.R. 404.1567)b), except he can
perform all postural activities only occasionally."  Admin. Rec.

at 18.[1]  In light of those findings, at step four of the
sequential analysis, the ALJ determined that claimant was
"capable of performing past relevant work as an order picker and
fast food worker." <u>Id</u>. at 20.  The ALJ went on, however, to step
five and concluded that even if claimant could not perform his
past relevant work, "there are other jobs that exist in
significant numbers on the national economy that the claimant
also can perform." <u>Id</u>. at 21.  And, "even if the claimant was
able to lift only up to 10 pounds occasionally, as opined by Dr.
Levy, he would be able to perform the duties of the jobs of
charge account clerk and various assembler positions." <u>Id</u>. at
22.

---

[2]     "RFC is what an individual can still do despite his or her
functional limitations.  RFC is an administrative assessment of
the extent to which an individual's medically determinable
impairment(s), including any related symptoms, such as pain, may
cause physical or mental limitations or restrictions that may
affect his or her capacity to do work-related physical and mental
activities.  Ordinarily, RFC is the individual's maximum
remaining ability to do sustained work activities in an ordinary
work setting on a regular and continuing basis, and the RFC
assessment must include a discussion of the individual's
abilities on that basis."  Social Security Ruling ("SSR"), 96-8p,
<u>Policy Interpretation Ruling Titles II and XVI: Assessing
Residual Functional Capacity in Initial Claims</u>, 1996 WL 374184 at
*2 (July 2, 1996) (citation omitted).

In light of the foregoing, the ALJ concluded that claimant was not "disabled," as that term is defined in the Act, through the date of his decision (June 3, 2011).

II.  <u>The ALJ Erred at Step Three</u>.

At step three of the sequential analysis, the ALJ must determine whether the claimant's impairment "meets or equals one of [the] listings" in Subpart P, Appendix 1 of the regulations. 20 C.F.R. § 404.1520(a)(4)(iii).  Claimant asserts that his impairment meets the requirements of the listing at section 1.04, which provides, in relevant part:

> <u>Disorders of the spine</u> (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), <u>resulting in compromise of a nerve root</u> (including the cauda equina) or the spinal cord.  With:
>
>> A.  <u>Evidence of nerve root compression</u> characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) <u>accompanied by sensory or reflex loss</u> <u>and</u>, if there is involvement of the lower back, <u>positive straight-leg raising test</u> (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A (emphasis supplied).

In reaching the conclusion that claimant's impairment did not meet or medically equal a listed impairment, the ALJ simply stated the following:

> The undersigned considered listings 1.04.  The claimant's back pain does not meet the listing because there is <u>no medical evidence of nerve root compression</u>, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication.

Admin. Rec. at 18 (emphasis supplied).  But, as claimant points out, magnetic resonance imaging of his spine revealed that there <u>was</u> nerve root compression.  <u>See, e.g.</u>, Admin. Rec. at 288 (pre-operative MRI in 2002 showed "disk herniation at L4-5 and L5-S1 on the left side with impingement of the L5 and S1 nerve roots); 541 ("Impression: Large left-sided disk protrusion at L4-L5, displacing the left L1 nerve root.  Small-to-moderate sized left-sided disk protrusion at L5-S1, displacing the S1 nerve root."); 408 (pre-operative MRI in June of 2009 revealed "left paracentral disk protrusion with associated annular tear.  This posteriorly displaces the proximal left S1 nerve root and could produce radiculopathy.").

Of course, the most relevant scan results are those obtained <u>after</u> claimant's spinal surgery.  But, even following surgery in November of 2009, claimant had "enhancing scar tissue in the

laminotomy site and around the left S1 nerve root," with a "mild broad-based disk bulge at [the L5-S1] level."  Admin. Rec. at 409 (interpreting an MRI performed in March of 2010).  An MRI performed approximately four months later, in July of 2010, revealed "postoperative changes on the left at L5-S1," with "enhancing epidural fibrosis at the surgical site involving the lateral recess and neural foramen."  Id. at 401-11.  And, while the ALJ noted that straight leg tests performed on claimant in June of 2010 were negative, more recent tests showed positive results.  See, e.g., Id. at 445 (August of 2010) and 455 (October of 2010).

It is, of course, for the ALJ to determine (at least in the first instance) whether those clinical findings support claimant's assertion that he meets (or medically equals) the listing at section 1.04A - in particular the requirements that he suffer from nerve root compression and exhibit positive straight leg raises.  But, given the ALJ's brief discussion of the issue, and his failure to reference any of claimant's post-surgical MRI results or his most recent positive straight leg raises, the court cannot determine if the ALJ even considered such evidence.

III. <u>The ALJ Erred in Determining Claimant's RFC</u>.

As noted above, the ALJ concluded that claimant has the residual functional capacity to perform light work, with some postural limitations.  Admin. Rec. at 18.  That conclusion is not supported by substantial evidence in the record.

First, the ALJ afforded "great weight" to the opinion of the non-examining state agency physician, Dr. Burton Nault.  Admin. Rec. at 20.  But, it appears the ALJ mis-characterized or misinterpreted both the timing and substance of Dr. Nault's opinion.  According to the ALJ:

> Dr. Burton Nault, M.D., opined that the claimant was able to perform the full range of light exertion work, except he could perform postural activities only occasionally (Exhibit 6F).

<u>Id</u>.  That is incorrect.  Dr. Nault reviewed claimant's medical records on January 26, 2010 (not November of 2010, as the ALJ stated), approximately six months after claimant sustained his back injury and approximately one month after he underwent an L5-S1 laminectomy and discectomy.  At that time, Dr. Nault opined that claimant was "totally disabled."  <u>Id</u>. at 334.  He went on to <u>speculate</u> that "it is reasonable to assume that within 12 months of his [alleged onset of disability - i.e., by June of 2010] he

should return to a functional capacity [for light work]."  _Id_.
That was, however, merely a prediction - a prediction that
appears to have been incorrect.[2]

In the ensuing months, claimant was seen by Dr. Clifford
Levy at Concord Orthopaedics, who repeatedly opined that claimant
was unable to perform the physical requirements of any gainful
activity and refused to clear claimant to return to work.  _See,_
_e.g._, Admin. Rec. at 426, 428, 430, 433.  By July of 2010, Dr.
Levy concluded that claimant had recovered to the point that he
was capable of lifting a maximum of 10 pounds occasionally and
five pounds frequently, and could work a maximum of four to eight
hours a day, three to five days a week.  _Id_. at 435.  At best,
then, Dr. Levy believed claimant was capable of performing the
exertional requirements of _sedentary_ work, on a less-than full-
time basis.  Dr. Levy repeated that opinion several times in the
months that followed.  _See Id_. at 438, 441.  But, he never
concluded that claimant was capable of a return to full time

---

[2]    Because the ALJ mistakenly believed that Dr. Nault issued
his opinion in November of 2010, he appears to have misunderstood
the import of that opinion.  Rather than seeing it for what it
was - a _prediction_ of claimant's future abilities in June of
2010, provided he recovered fully from his recent back surgery -
the ALJ appears to have seen it as an opinion of claimant's _then-_
_current_ abilities.

work, nor did he ever opine that claimant was capable of performing the exertional requirements of light work (even on a part-time basis).

Dr. Levy's most recent opinions were shared by Dr. Tung, a pain management specialist, who, beginning in August of 2010, repeatedly opined that claimant was capable of "sedentary work only; change position frequently."  Admin. Rec. at 451.  See also Id. at 460, 471, 486.

The court need not belabor the issue.  The salient point is this: neither the opinions of claimant's treating medical professionals, nor the administrative record as a whole, supports the ALJ's conclusion that claimant is capable of performing the exertional demands of light work.  And, as noted above, the ALJ's heavy reliance on the opinion of Dr. Nault was misplaced. Finally, the ALJ's reliance on claimant's activities of daily living to support the conclusion that he could perform light work was also misplaced insofar as the ALJ overstated claimant's reported activities and abilities.  Compare Admin. Rec. at 19-20, with id. at 176-84.

Parenthetically, the court notes that the ALJ's ancillary conclusion, at step five of the sequential analysis, that claimant is capable of performing two <u>sedentary-level</u> jobs is insufficiently developed or discussed for the court to conduct a meaningful review.  Even if the court could review that decision, it would not be appropriate since the question of whether claimant meets the listing level impairment in section 1.04A remains unresolved.

## Conclusion

For the foregoing reasons, claimant's motion to reverse the decision of the Commissioner (document no. 9) is granted to the extent he seeks a remand for further proceedings.  The Commissioner's motion to affirm his decision (document no. 11) is denied.

Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision dated June 3, 2011, is vacated and this matter is hereby remanded for further proceedings consistent with this order.  The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

January 15, 2013

cc:  Janine Gawryl, Esq.
     Robert J. Rabuck, AUSA

16